# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF GREAT LAKES AND INTERNATIONAL TOWING & SALVAGE COMPANY INC. AND ST. MARYS CEMENT INC. (CANADA) FOR EXONERATION FROM OR LIMITATION OF LIABILITY | Case No.: 1:17-cv-02116-DAP<br><br>JUDGE DAN AARON POLSTER<br><br>**CLAIMANT/DEFENDANT/THIRD-PARTY PLAINTIFF MICHAEL JARVIS'S ANSWER, NOTICE OF CLAIM & THIRD-PARTY COMPLAINT** |

## ANSWER TO VERIFIED COMPLAINT

Now comes Claimant/Defendant/Third-Party Plaintiff Michael Jarvis, an Ohio resident with an interest in the Admiralty proceedings before the Court due to personal injury and property loss attributable to the operation of the subject tug PETITE FORTE, and for his Answer to the Petitioners' Verified Complaint For Exoneration from or Limitation of Liability states as follows:

### JURISDICTION AND VENUE

1. Admit.

2. Admit.

### BACKGROUND

3. Admit.

4. Admit.

5. Admit.

6. Admit.

7. Deny for lack of knowledge.

8. Deny.

9. Admit as to location and route of tug. Deny for lack of knowledge the allegation of who was navigating the tug and the assertion that the tug pilot had a clear line of sight.

10. Deny.

11. Deny.

12. Deny.

13. Deny. The PETITE FORTE ran over Mr. Jarvis' anchored fishing vessel, causing it to capsize. The following is a picture of Mr. Jarvis' damaged vessel from an inspection attended by counsel for all interested parties:



14. Admit.

15. Deny.

16. Deny, only as it pertains to the assertion of no damage to the barge.

17. Deny for lack of knowledge.

18. Deny.

19. Admit.

## CLAIM FOR RELIEF

20. Deny.

21. Deny.

22. Deny.

23. Deny.

24. Deny.

25. Deny for lack of knowledge.

26. Claimant/Defendant can neither Admit nor Deny a procedural assertion.

27. Claimant/Defendant can neither Admit nor Deny a procedural assertion.

28. Deny.

## AFFIRMATIVE DEFENSES

29. Claimant/Defendant/Third-Party Plaintiff Jarvis incorporates each and every averment contained in the preceding paragraphs as if the same were more fully restated here and additionally asserts the following affirmative defenses against Great Lakes and International Towing & Salvage Company Inc. (hereinafter "GLITS") and St. Marys Cement Inc. (hereinafter "St. Marys").

30. Neither GLITS nor St. Marys is entitled to exoneration as the tug/barge allided with the anchored and stationary recreational fishing boat, which directly and proximately caused the injuries sustained by Michael Jarvis, as further alleged in his Notice of Claim.

31. Neither GLITS nor St. Marys is entitled to exoneration as the subject allision was caused by the unseaworthiness of the tug/barge.

32. Neither GLITS nor St. Marys is entitled to exoneration as the subject allision was caused by the independent negligent acts or omissions of GLITS and/or independent negligent acts or omissions of St. Marys.

33. Neither GLITS nor St. Marys is entitled to exoneration as the tug/barge was neither properly equipped nor manned by a competent crew.

34. Neither GLITS nor St. Marys is entitled to exoneration as the subject allision was caused by the negligent acts or omission of others for which GLITS and/or St. Marys is vicariously liable under respondeat superior or otherwise.

35. Neither GLITS nor St. Marys is entitled to limitation of liability because they had privity with or knowledge of the specific negligent acts or omissions of the crew that proximately caused the subject allision.

36. Neither GLITS nor St. Marys is entitled to limitation because they failed to select or provide a competent crew.

37. Neither GLITS nor St. Marys is entitled to limitation of liability because they failed to remedy deficiencies in the crew that were known or that could have been discovered with reasonable diligence and that such deficiencies directly and proximately caused the subject allision.

38. Neither GLITS nor St. Marys is entitled to limitation of liability because they failed to remedy deficiencies in the tug/barge that rendered the vessel unseaworthy and that proximately caused the subject allision, and such deficiencies were known or could have

been discovered with reasonable diligence.

39. Petitioner's Verified Complaint fails to state a claim upon which relief can be granted.

40. Petitioner's claims are barred by the doctrine of unclean hands, laches, waiver, and/or estoppel.

41. Claimant/Defendant/Third-Party Plaintiff Jarvis reserves the right to amend his pleadings and add any additional claims, affirmative defenses, counter-claims, cross-claims, and/or third-party claims as may be permitted by the applicable rules of civil procedure and the court's case management orders.

**WHEREFORE**, Claimant/Defendant/Third-Party Plaintiff Jarvis prays that Petitioner's Verified Complaint be dismissed at Petitioner's costs and specifically that:

A) GLITS and St. Marys be denied exoneration from liability;

B) GLITS and St. Marys be denied limitation of liability;

C) GLITS and St. Marys be required to increase the security deposit to an amount equal to the true fair market value of the barge and its pending freight at the time of the subject allision; and

D) The Court impose appropriate sanctions under Federal Rule of Civil Procedure 11 for GLITS and St. Marys knowingly false certification in its Verified Complaint that "At no time…did the tug/barge make contact with the fishing vessel."

# NOTICE OF CLAIM & THIRD-PARTY COMPLAINT

Now comes Claimant/Defendant/Third-Party Plaintiff Michael Jarvis, and for his Claims against Great Lakes and International Towing & Salvage Company Inc. and St. Marys Cement Inc. and his Third-Party Complaint against Alen Gorishti and Fettes Shipping, Inc. states as follows:

1. Claimant/Defendant/Third-Party Plaintiff Jarvis incorporates each and every averment provided in his Answer to Verified Complaint as if the same were more fully restated here.

## PARTIES

2. Claimant/Defendant/Third-Party Plaintiff Michael Jarvis is an individual currently residing in Akron, Ohio.

3. Petitioner/Plaintiff Great Lakes and International Towing & Salvage Company Inc. (hereinafter "GLITS") is a foreign corporation organized under the laws of Canada and with its principal place of business located in Burlington, Ontario, Canada. At all times herein relevant, GLITS was the owner of the tug, PETITE FORTE.

4. Petitioner/Plaintiff St. Marys Cement Inc. (hereinafter "St. Marys") is a foreign corporation organized under the laws of Canada and with its principal place of business located in Toronto, Ontario, Canada. At all times herein relevant, St. Marys was the owner of the barge, ST. MARYS CEMENT.

5. Third-Party Defendant Fettes Shipping, Inc. (hereinafter "Fettes") is a foreign corporation organized under the laws of Canada and with its principal place of business in Burlington, Ontario, Canada.

6. Third-Party Defendant Alen Gorishti (hereinafter "Gorishti") is an individual believed to

currently reside within Ontario, Canada. At all times herein relevant, Gorishti was an employee, agent, and/or representative of GLITS, St. Marys, and/or Fettes.

## JURISDICTION

7. Defendant/Claimant/Third-Party Plaintiff Jarvis incorporates each and every averment contained in the paragraphs above as if the same were more fully restated here.

8. The Court has jurisdiction over this admiralty and maritime matter pursuant to 28 U.S.C. §1333.

9. The Court has supplemental jurisdiction over Jarvis's third-party claims against Fettes and Gorishti pursuant to 28 U.S.C §1367 as such claims form the same case or controversy as those claims against GLITS and St. Marys. Alternatively, the Court has original jurisdiction over Jarvis's third-party claims against Fettes and Gorishti pursuant 28 U.S.C. §1332.

10. Venue is proper in this Court pursuant to Rule F(9) of the Supplemental Rules for Certain Admiralty and Maritime Cases of the Federal Rules of Civil Procedure.

## FACTS COMMON TO ALL CLAIMS

11. Defendant/Claimant/Third-Party Plaintiff Jarvis incorporates each and every averment contained in the paragraphs above as if the same were more fully restated here.

12. At all times herein relevant, Michael Jarvis was the owner of an 18-foot Lund fishing boat.

13. At all times herein relevant, Mr. Jarvis was an experienced angler and frequent boater on the waters of Lake Erie and other territorial waters of the State of Ohio.

14. On or about November 6, 2016, Mr. Jarvis and his cousin, Roger Burton, began a fishing excursion upon Lake Erie, approximately two and a half miles northwest of Fairport

Harbor, Ohio.

15. Anchored in Mr. Jarvis's Lund, the pair was stationed in a waterway well known to be frequented by anchored recreational fishing vessels.

16. The pair had been fishing for approximately two hours when Mr. Jarvis heard Mr. Burton exclaim a profanity as the pair suddenly identified the PETITE FORTE and the ST. MARYS CEMENT nearly on top of them.

17. Mr. Burton ran to the front of the Lund as Mr. Jarvis attempted to start the ship's motor. When the Lund's engine did not start immediately, Mr. Jarvis raced to the front of the vessel and began yelling to the crew of the PETITE FORTE and ST. MARYS CEMENT.

18. Despite Mr. Jarvis's and Mr. Burton's screams warning of the impending danger, the PETITE FORTE and ST. MARYS CEMENT, operating as a single composite and single vessel, allided with Mr. Jarvis's Lund. The force of the PETITE FORTE and ST. MARYS CEMENT running over the Lund caused Mr. Jarvis's vessel to capsize.

19. Mr. Jarvis and Mr. Burton attempted to cling to bow of the barge before each lost their grip and dropped to the water.

20. Thrashing above and below the water, Mr. Jarvis was eventually able to locate and swim back to his capsized vessel.

21. Once he obtained a foothold and handhold in the vessel, Mr. Jarvis yelled and waved his arms in an attempt to signal the PETITE FORTE and ST. MARYS CEMENT.

22. As the tug and barge eventually turned, Mr. Jarvis lost sight of Mr. Burton.

23. Without knowing his cousin's fate, Mr. Jarvis clung to his capsized Lung and awaited rescue from the Coast Guard.

24. A Coast Guard vessel dispatched from Fairport Harbor eventually reached Mr. Jarvis and

took him to safety. Despite an extensive search, the Coast Guard was unable to retrieve Mr. Burton.

25. Sixty-nine days later, Mr. Burton's remains washed ashore on a beach in Conneaut, Ohio.

26. Subsequent inspection of Mr. Jarvis's Lund by representatives of all Parties herein revealed paint transfer between the vessels conclusive for the PETITE FORTE and/or ST. MARYS CEMENT striking the Lund's hull.

## **COUNT ONE – GLITS**

27. Defendant/Claimant/Third-Party Plaintiff Jarvis incorporates each and every averment contained in the paragraphs above as if the same were more fully restated here.

28. At the time of the subject allision, GLITS was negligent in entrusting the tug/barge to an unqualified and incompetent crew.

29. At the time of the subject allision, GLITS was negligent in hiring, retaining, and/or supervising Alen Gorishti and the crew of the tug/barge.

30. At the time of the subject allision, GLITS was negligent in training Gorishti and the crew of the tug/barge in the safe operation of the tug/barge.

31. At the time of the subject allision, GLITS was negligent in permitting the tug/barge to be navigated through an area known to be frequented by recreational crafts when alternative and safer routes were available.

32. At the time of the subject allision, GLITS was negligent in failing to develop, implement, and enforce proper policies and procedures for the safe operation of the tug/barge, including the use of lookouts.

33. At the time of the subject allision, GLITS was negligent in failing to develop, implement and enforce proper policies and procedures to ensure that the tug/barge and its machinery

met all applicable safety regulations established for the vessel, including, but not limited to, functioning radar, a functioning voyage data recorder, and arrangements for ensuring communication between crew members.

34. At the time of the subject allision, GLITS was negligent in failing to provide the number and qualifications of crewmembers for the tug/barge.

35. At the time of the subject allision, GLITS was negligent in providing the crew with and/or permitting the crew to operate a vessel that was not properly equipped, rendering the tug/barge unseaworthy.

36. At the time of the subject allision, GLITS was negligent in operating and/or permitting the operation of the tug/barge with actual or constructive knowledge of dangerous conditions on the tug/barge.

37. At the time of the allision, GLITS was negligent in operating and/or permitting the operation of the tug/barge by a crew that was not competent.

38. At the time of the allision, GLITS was negligent in failing to remedy deficiencies in the tug/barge that were known or that could have been discovered with reasonable diligence.

39. At the time of the subject allision, GLITS was negligent in failing to remedy deficiencies in the tug/barge that rendered it unseaworthy.

40. As a direct and proximate result of GLITS negligence, and/or other actions or omissions described herein, Plaintiff Jarvis suffered physical, mental, and emotional injuries and incurred significant property loss, as further set forth below.

## COUNT TWO – ST. MARYS

41. Defendant/Claimant/Third-Party Plaintiff Jarvis incorporates each and every averment contained in the paragraphs above as if the same were more fully restated here.

42. At the time of the subject allision, St. Marys was negligent in entrusting the tug/barge to an unqualified and incompetent crew.

43. At the time of the subject allision, St. Marys was negligent in hiring, retaining, and/or supervising Alen Gorishti and the crew of the tug/barge.

44. At the time of the subject allision, St. Marys was negligent in training Gorishti and the crew of the tug/barge in the safe operation of the tug/barge.

45. At the time of the subject allision, St. Marys was negligent in permitting the tug/barge to be navigated through an area known to be frequented by recreational crafts when alternative and safer routes were available.

46. At the time of the subject allision, St. Marys was negligent in failing to develop, implement, and enforce proper policies and procedures for the safe operation of the tug/barge, including the use of lookouts.

47. At the time of the subject allision, St. Marys was negligent in failing to develop, implement and enforce proper policies and procedures to ensure that the tug/barge and its machinery met all applicable safety regulations established for the vessel, including, but not limited to, a functioning radar, a functioning voyage data recorder, and arrangements for ensuring communication between crew members.

48. At the time of the subject allision, St. Marys was negligent in failing to provide the number and qualifications of crewmembers for the tug/barge.

49. At the time of the subject allision, St. Marys was negligent in providing the crew with and/or permitting the crew to operate a vessel that was not properly equipped, rendering the tug/barge unseaworthy.

50. At the time of the subject allision, St. Marys was negligent in operating and/or permitting

the operation of the tug/barge with actual or constructive knowledge of dangerous conditions on the tug/barge.

51. At the time of the allision, St. Marys was negligent in operating and/or permitting the operation of the tug/barge by a crew that was not competent.

52. At the time of the allision, St. Marys was negligent in failing to remedy deficiencies in the tug/barge that were known or that could have been discovered with reasonable diligence.

53. At the time of the subject allision, St. Marys was negligent in failing to remedy deficiencies in the tug/barge that rendered it unseaworthy.

54. As a direct and proximate result of St. Marys negligence, and/or other actions or omissions described herein, Plaintiff Jarvis suffered physical, mental, and emotional injuries and incurred significant property loss, as further set forth below.

### **COUNT THREE – THIRD-PARTY CLAIM - ALEN GORISHTI**

55. Defendant/Claimant/Third-Party Plaintiff Jarvis incorporates each and every averment contained in the paragraphs above as if the same were more fully restated here.

56. Upon information and belief, at the time of the subject allision, Alen Gorishti was piloting the tug/barge.

57. Upon information and belief, at the time of the subject allision, Gorishti was an employee, agent or representative of Fettes and was acting in the course and scope of his employment, agency, and/or representation. In the alternative, Gorishti was an employee, agent, or representative of GLITS and/or St. Marys and was acting in the course and scope of his employment, agency, and/or representation at the time of the subject allision.

58. At the time of the subject allision, Gorishti was negligent in failing to pilot the tug/barge

in a reasonably safe and prudent manner.

59. At the time of the subject allision, Gorishti was negligent in failing to pilot the tug/barge in accordance with the Inland Navigate Rules, as specifically set forth below.

60. At the time of the subject allision, Gorishti was negligent in failing to maintain a proper look-out by sight and hearing as well as by all means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

61. At the time of the subject allision, Gorishti was negligent in failing to pilot the tug/barge at a safe speed so that effective action could be taken to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.

62. At the time of the subject allision, Gorishti was negligent in failing to use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists; and if there is any such doubt, to properly use radar equipment.

63. At the time of the subject allision, Gorishti was negligent in failing to take appropriate action to avoid collision, including alteration of course and speed, or stopping and reversing.

64. At the time of the subject allision, Gorishti was negligent in failing to keep out of the way of a vessel engaged in fishing.

65. At the time of the subject allision, Gorishti was negligent in failing to proceed at a safe speed adapted to the prevailing circumstances and any conditions of restricted visibility.

66. At the time of the subject allision, Gorishti was negligent in piloting the tug/barge on an improper and unsafe course in a known recreation fishing area and at an unsafe speed for the conditions.

67. At the time of the subject allision, Gorishti was negligent in failing to utilize the upper wheelhouse to navigate the tug/barge.

68. At the time of the subject allision, Gorishti was negligent in piloting the tug/barge without operational radar.

69. At the time of the subject allision, Gorishti was negligent in piloting the tug/barge without necessary look-outs and without an adequate crew.

70. At the time of the subject allision, Gorishti was negligent in failing to spot the recreational fishing boat and alter course and speed so as to avoid a collision.

71. Fettes, and/or GLITS, and/or St. Marys are liable for Gorishti's negligent and reckless acts identified above under the doctrine of respondeat superior.

72. As a direct and proximate result of Gorishti's negligence, and/or other actions or omissions described herein, Plaintiff Jarvis suffered physical, mental, and emotional injuries and incurred significant property loss, as further set forth below.

## **COUNT FOUR – THIRD-PARTY CLAIM – FETTES**

73. Defendant/Claimant/Third-Party Plaintiff Jarvis incorporates each and every averment contained in the paragraphs above as if the same were more fully restated here.

74. Upon information and belief, at the time of the subject allision, Fettes was the Operator of the tug/barge pursuant to an agreement with GLITS and/or St. Marys.

75. At the time of the subjection allision, Fettes was negligent in entrusting the tug/barge to an unqualified and incompetent pilot and crew.

76. At the time of the subjection allision, Fettes was negligent in hiring, retaining, and supervising Gorishti and the crew of the tug/barge.

77. At the time of the subjection allision, Fettes was negligent in training Gorishti and the

crew of the tug/barge in the safe operation of the tug/barge.

78. At the time of the subject allision, Fettes was negligent in permitting the tug/barge to be navigated through an area known to be frequented by recreational crafts when alternative and safer routes were available.

79. At the time of the subject allision, Fettes was negligent in failing to develop, implement, and enforce proper policies and procedures for the safe operation of the tug/barge, including the use of lookouts.

80. At the time of the subject allision, Fettes was negligent in failing to develop, implement and enforce proper policies and procedures to ensure that the tug/barge and its machinery met all applicable safety regulations established for the vessel, including, but not limited to, a functioning radar, a functioning voyage data recorder, and arrangements for ensuring communication between crew members.

81. At the time of the subject allision, Fettes was negligent in failing to provide the number and qualifications of crewmembers for the tug/barge.

82. At the time of the subject allision, Fettes was negligent in providing the crew with and/or permitting the crew to operate a vessel that was not properly equipped, rendering the tug/barge unseaworthy.

83. At the time of the subject allision, Fettes was negligent in operating and/or permitting the operation of the tug/barge with actual or constructive knowledge of dangerous conditions on the tug/barge.

84. At the time of the allision, Fettes was negligent in operating and/or permitting the operation of the tug/barge by a crew that was not competent.

85. At the time of the allision, Fettes was negligent in failing to remedy deficiencies in the

tug/barge that were known or that could have been discovered with reasonable diligence.

86. At the time of the subject allision, Fettes was negligent in failing to remedy deficiencies in the tug/barge that rendered it unseaworthy.

87. As a direct and proximate result of Fettes's negligence, and/or other actions described herein, Plaintiff Jarvis suffered physical, mental, and emotional injuries and incurred significant property loss, as further set forth below.

## COUNT FIVE – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## GLITS, ST. MARY'S, GORISHTI & FETTES

88. Defendant/Claimant/Third-Party Plaintiff Jarvis incorporates each and every averment contained in the paragraphs above as if the same were more fully restated here.

89. As a direct and proximate result of the actions and/or omissions of GLITS, St. Marys, Gorishti, and Fettes, Mr. Jarvis witnessed the mortal peril and death of Roger Burton.

90. As a direct and proximate result of witnessing Mr. Burton's struggle and ultimate demise, Mr. Jarvis suffered severe and debilitating emotional distress.

91. At the time of the allision and immediately afterwards, Mr. Jarvis was a bystander to Mr. Burton's struggle to stay afloat and his ultimate demise.

92. Mr. Jarvis and Mr. Burton maintained a close familial and social relationship prior to the subject allision.

93. Since the allision, Mr. Jarvis has developed post-traumatic stress disorder and required medical and psychiatric treatment.

94. Mr. Jarvis's emotional distress and suffering are reasonably certain to be permanent conditions.

## DAMAGES COMMON TO ALL CLAIMS

95. Defendant/Claimant/Third-Party Plaintiff Jarvis incorporates each and every averment contained in the paragraphs above as if the same were more fully restated here.

96. As a direct and proximate result of the actions and/or omissions of GLITS, St. Marys, Gorishti, and Fettes, Mr. Jarvis suffered bodily injury to his ears and lungs, eventually causing him to develop bronchitis. Mr. Jarvis also experienced hypothermia immediately after the allision.

97. In addition to his bodily injuries, Mr. Jarvis has suffered severe and debilitating emotional distress. Mr. Jarvis's physicians have diagnosed him with post-traumatic stress disorder, depression, and insomnia.

98. For his injuries, Mr. Jarvis has incurred medical expenses, out-of-pocket expenses, and other expenses.

99. As a further direct and proximate result of the actions and/or omissions of GLITS, St. Marys, Gorishti, and Fettes, Mr. Jarvis incurred property damage including the complete loss of his Lund, its associated engines and electronic equipment, and other valuable equipment. Mr. Jarvis also incurred additional economic loss due to the loss or destruction of personal property contained on his boat or on his person at the time of the allision. Such personal property includes, but is not limited to, an iPhone 6S, binoculars, eye glasses, flare gun, and numerous pieces of fishing rods, nets, tackle and other equipment.

**WHEREFORE** Michael Jarvis demands judgment against GLITS, St. Marys, Gorishti, and Fettes, jointly and severally, in an amount of compensatory damages in excess of $75,000.00, the cost of this action, all interest available by law, attorneys' fees, and any other equitable or legal relief this honorable Court finds appropriate.

Respectfully Submitted,

/s/ Jarrett J. Northup_____
JARRETT J. NORTHUP (0080697)
MICHAEL P. KARST (0091020)
JEFFRIES, KUBE, FORREST &
MONTELEONE CO., L.P.A.
26021 Center Ridge Rd., #200
Westlake, Ohio  44145
(216) 771-4050
(216) 771-0732 Fax
E-mail:   jnorthup@jkfmlaw.com
                mkarst@jkfmlaw.com

*Counsel for Michael Jarvis*

## JURY DEMAND

Claimant/Defendant/Third-Party Plaintiff Michael Jarvis hereby demands a trial by jury on all claims and/or issues available by law.

/s/ Jarrett J. Northup_____
JARRETT J. NORTHUP (0080697)

*Counsel for Michael Jarvis*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Claimant/Defendant/Third-Party Plaintiff Michael Jarvis' Answer, Notice of Claim & Third-Party Complaint was sent via the court's electronic filing system this 1st day of December, 2017 to the following:

Eric. S. Daniel, Esq.
Robert W. Burger, Esq.
Harold W. Henderson, Esq.
Thompson Hine, LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
eric.daniel@thompsonhine.com
rob.burger@thompsonhine.com
hal.henderson@thompsonhine.com

*Attorneys for GLITS & St. Marys*

Richard V. Zurz, Jr., Esq.
Michael Schmeltzer, Esq.
Slater & Zurz, LLP
One Cascade Plaza, Suite 2210
Akron, OH 44308

*Attorneys for Andrea Burton, as Administratrix*

/s/ Jarrett J. Northup
JARRETT J. NORTHUP (0080697)
*Counsel for Michael Jarvis*